Jonathan A. Backman  
Law Office of Jonathan A. Backman  
117 N. Center Street  
Bloomington, Illinois 61701-5001  
(309) 820-7420  
jbackman@backlawoffice.com  

Matthew L. Johnson  
Matthew L. Johnson & Associates, P.C.  
Lakes Business Park  
8831 West Sahara Avenue  
Las Vegas, Nevada 89117  
(702) 471-0065  
mjohnson@mjohnsonlaw.com  

E-filed: May 3, 2010

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | Chapter 11 |
| XYIENCE INCORPORATED, a Nevada corporation, | No. BK-S-08-10474-MKN |
| Debtor. | Hearing: May 28, 2010<br>9:30 a.m. |

LIQUIDATING TRUSTEE'S MOTION FOR APPROVAL
OF A SETTLEMENT OF CERTAIN PENDING CLAIMS AGAINST
ARC INVESTMENT PARTNERS, LLC, ADAM ROSEMAN AND ADAM FRANK

Plaintiff David Herzog, as Liquidating Trustee (the "Trustee") for the post-confirmation liquidating estate (the "Trust Estate") of Xyience Incorporated (the "Debtor"), the former debtor and debtor in possession the above-captioned Chapter 11 case (the "Bankruptcy Case" or the "Case"), hereby moves this Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an Order approving the Trustee's settlement of the Estate's claims against the following defendants (the "Settling Defendants") in the adversary proceeding styled Herzog v. ARC Investment Partners, LLC, Adversary Case No. 10-01009 (the "Adversary Proceeding"):

        a.    ARC Investment Partners, LLC ("ARC");

        b.    Adam Roseman; and

        c.    Adam Frank

In support of his motion, the Trustee states as follows:

## PROCEDURAL BACKGROUND

1. On January 18, 2008 (the "Petition Date"), the Debtor filed in this Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et. seq. (the "Bankruptcy Code" or the "Code").

2. Pursuant to an Order entered January 31, 2008 (the "Avoidance Date Order"), the Court dismissed, with prejudice, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code that had been filed against the Debtor on January 3, 2008, as Case No. BK-S-08-10049-MKN.

3. The Avoidance Date Order provided that, in this Case, the period for avoidance actions under the applicable provisions of the Bankruptcy Code would be measured as if the petition date in this Case were January 3, 2008.

4. From January 18, 2008 through the October 23, 2008, confirmation of the Debtor's plan of reorganization (the "Plan"), the Debtor operated and managed its business affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. In April 2008, the Debtor sold its business and substantially all of its operating assets to Manchester Capital, Inc.

6. On May 19, 2008, the Debtor filed its Plan, which provided, among other things, that the Debtor's remaining assets, including all of its pre-petition claims, rights and causes of action, and all of its right and powers to pursue avoidance actions under Chapter 5 of the Bankruptcy Code, would be transferred to and would vest in a Liquidating Trust for the benefit of various creditors groups.

7. The Plan further provided that, upon its Effective Date, a Liquidating Trustee would represent the Trust Estate.

8. On October 23, 2008, the Court entered an Order approving the Debtor's Disclosure Statement in connection with the Plan, and confirming the Plan.

1        9.      On November 12, 2009, the Court entered an Order authorizing the Trustee to accept his appointment as Liquidating Trustee, and the Trustee accepted the appointment on that day.

10.     On November 20, 2009, the Trustee caused notice of his appointment to be filed and served, and as a result, on November 23, 2009, the Plan became effective.

### PERTINENT TRUST AGREEMENT PROVISIONS

11.     The Liquidating Trust Agreement authorizes the Trustee, among other things, to pursue — and where appropriate, to compromise and settle — claims, rights and causes of action on behalf of the Trust Estate. LTA at 7-8 §§ 14(f) and 14(i).

12.     The Trust Agreement further provides that, where a settlement involves a claim of $25,000 or more, the Trustee must obtain the Court's approval of the settlement. LTA at 8 § 14(i).

13.     Under the Trustee's engagement agreement with undersigned counsel (the "Engagement Agreement"), a third of any settlement, as well as counsel's expenses (including the fees and expenses of local counsel), incurred in the claims at issue in the Adversary Proceeding are payable to counsel before the settlement proceeds vest in the Trust Estate. *See* Engagement Letter (Exhibit B to the Notice of (1) Liquidating Trustee's Acceptance of Liquidating Trust Agreement, and (2) Effectiveness of Engagement Letter, filed November 20, 2009) at 4 § 7.B.

14.     On the other hand, counsel's fees and expenses (including local counsels' fees) incurred in connection with the Trust Estate's other claims, or in pursuing claims objections, are not payable unless and until either (a) all administrative claims of the bankruptcy case have been paid in full, or (b) the Trustee and counsel have prevailed on and received proceeds in connection with such other matters. *Id.* at 3-4 § 7.

## THE ADVERSARY PROCEEDING

15. The Trustee commenced the Adversary Proceeding on January 3, 2010, by filing his original Complaint (the "Original Complaint") against ARC, Mr. Roseman and four other defendants: (a) Mr Dash, the Debtor's Chief Financial Officer during the time period at issue here; (b) Patrick Brauckmann, a Canadian and a former business associate of Mr. Roseman; (c) Key Management, SA, a British company ("Key"); and (d) Darlis Invest & Trade Corp., a Panamanian corporation ("Darlis").

16. The Original Complaint alleged, in principal part, that in and around January and February 2007, Mr. Roseman, as the Debtor's Chief Executive Officer, President and director, and Mr. Dash, as its CFO, breached their fiduciary duties to the Debtor by conspiring with Mr. Brauckmann, Key and Darlis to further their own interests at the expense of the Debtor.

17. According to the Complaint, at the time of the events at issue here, the Debtor was in default of a $10 million secured promissory note owing from the Debtor to a receiver of a defunct corporation in a then-pending federal district court case in Chicago, Illinois (the "Brush Monroe Note" or the "Note").

18. The Original Complaint alleged that, after the Debtor had defaulted on the Note (by failing to repay it when it came due in October 2006), the company, at Mr. Dash's recommendation, retained the services of Mr. Roseman and ARC to raise funds so that, among other things, the Debtor could redeem the Note.

19. The Original Complaint further alleged that, instead of working to raise funds for the Debtor, Mr. Roseman had conspired with Mr. Brauckmann and two entities of which he was a principal (i.e., Key and Darlis) to raise funds for Key to purchase the Note for their personal benefit.

20. The Original Complaint alleged that the Brush Monroe Note was convertible to shares of the Debtor's common stock representing a substantial portion of the Debtor's equity, and that the conspirators raised funds for the Note's acquisition by

selling options to purchase the Debtor's stock, which they planned to replace with actual shares once Key acquired and converted the Note.

21. The Original Complaint then alleged that, on virtually the eve of the receiver's sale to the conspirators, the Debtor's independent Board members learned about the plot, and retained counsel to seek to prevent the sale; in the end, however, they were able only to negotiate terms that were somewhat more favorable to the Debtor than would have been the case absent their intervention — such as limiting the amount of shares that were acquired through the Note's conversion, and removing the secured features of the Note following Key's acquisition of it.

22. Finally, the Original Complaint alleged that, on or about February 21, 2007, the conspirators and the full Board entered into a written agreement (the "Key Agreement") that included a release of all of the parties to the conspiracy (other than Mr. Dash and ARC), but that the release was invalid because, among other reasons, it constituted a fraudulent transfer.

23. In addition to the allegations regarding the Brush Monroe Note and related scheme, the Original Complaint separately alleged that ARC had received $75,000 in preferential payments — $25,000 during the regular preference period and $50,000 during the extended period established by the Avoidance Date Order.

24. On February 22, 2007, the Trustee filed an Amended Complaint, the primary purpose of which was to add Mr. Frank as a defendant.

25. According to the Amended Complaint, Mr. Frank too breached his fiduciary duties to the Debtor by becoming a member of the Debtor's Board in January 2007, and then immediately joining Messrs. Dash and Roseman in their conspiracy with the other defendants.

26. On March 30, 2007, defendants ARC and Mr. Roseman moved to dismiss the Amended Complaint on a variety of grounds, including among others: (a) that the Avoidance Date Order was ineffective to extend the statutory preference period; (b) that Mr. Roseman's actions in connection with the Brush Monroe Note were

1  undertaken in good faith and actually benefitted the company; and (c) that the release
2  contained in the Key Agreement absolved Mr. Roseman of liability.

3      27.    Mr. Frank's answer is not yet due.

4      28.    As for the other defendants, they all are located outside the United
5  States — including Mr. Dash, an American citizen who works and resides in China —
6  and have not yet been served with the Original or Amended Complaint.

## THE PROPOSED SETTLEMENT

    29.    With two minor exceptions (beneficial to the Estate), the terms of the proposed settlement (the "Proposed Settlement") are straightforward: the Settling Defendants — i.e., ARC together with Messrs. Roseman and Frank — will pay the Trustee a total of $325,000 in full and final settlement of the claims against them in the Adversary Proceeding.  *See* Settlement Agreement (attached hereto as Exhibit A).

    30.    Of the $325,000, the first $275,000 will be paid promptly following the Settlement Agreement's Effective Date — i.e., the date on which an Order by this Court approving the Proposed Settlement becomes final and non-appealable.  The balance will be paid in two equal installments on or before September 30, 2010, and January 31, 2011.

    31.    For defendants ARC and Mr. Roseman, the release they will receive in exchange for the settlement payment is a standard, all-encompassing one that releases them from any and all claims, right or causes of action that the Debtor or the Trustee might possess against them for any matter relating to the Adversary Proceeding or otherwise.

    32.    For defendant Mr. Frank, however, the release will be narrower because it pertains only to the facts at issue in the Adversary Proceeding and expressly does <u>not</u> release him from any of the claims at issue in the separate adversary proceeding pending against him in this Bankruptcy Case — i.e., <u>Herzog v. Zyen et al.</u>, Case No. 09-1402-MKN (the "Zyen Case").

33. The only other somewhat unusual aspect of the Proposed Settlement here pertains to the Trustee's counsel; that is, in order to make the settlement more beneficial to the Estate, while recognizing the substantial fee that he will be receiving for what has been relatively limited work in the Adversary Proceeding to date, the Trustee's counsel has agreed to set aside $25,000 of the $108,333 fee to which he is entitled under his Engagement Agreement to be used exclusively for expenses in the Adversary Proceeding and in the Zyen Case, with the unused balance of such funds to vest in the Trust Estate at the conclusion of these two proceedings.

### ARGUMENT FOR APPROVAL

34. As the Court is aware, Rule 9019(a) authorizes trustees to settle and compromise disputes, subject to bankruptcy court approval, and the Plan here does likewise. *See* Plan at 15 § 7.2(i); Plan at 17-18 § 9.1; *In re Holywell Corp.*, 913 F.2d 873, 881 (11th Cir. 1990) (bankruptcy court retains jurisdiction to approve liquidating trustee's settlements of pre-confirmation claims).

35. In ruling on an approval motion, courts allow trustees broad discretion in negotiating and reaching such settlements, and grant the motions so long as they are fair and equitable and in the best interests of the debtor's creditors and its estate. *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414 (1968); *Arden v. Motel Partners (In re Arden)*, 156 F.3d 729 (9th Cir. 1999); *see generally* 9 Collier on Bankruptcy, ¶9019[1] (15th Edition 1990) (noting that compromises are favored in bankruptcy cases).

36. The Ninth Circuit has directed that, "[i]n determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount

interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

37. Furthermore, "[a] precise determination of likely outcomes is not required," since "an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." *In re Telesphere Comm's, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). The Court's role is not "finally to determine the numerous questions of law and fact raised . . . but rather to canvass the issue and see whether the settlement 'fall[s] below the lowest point in the rage of reasonableness." *In re Lion Capital Group*, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985)

38. Here, the Trustee has considered each of the four *A&C Properties* factors in reaching the foregoing settlement with the Settling Defendants, and submits that each supports the Proposed Settlement.

39. First, regarding the probability of success on the merits, the Trustee's only near-certain victory here would be on the $25,000 ordinary preference claim against ARC. This Court's prior rulings in the Bankruptcy Case have cast significant doubt as to whether the Trustee would prevail on his claim as to the other $50,000 allegedly preferential payment. And as for the breach of fiduciary claims, the Trustee's case against the three Settling Defendants would face considerable hurdles.

40. For one, even assuming — as the Trustee has for the purposes of the settlement negotiations — that the Trustee could and would prove that Messrs. Roseman and Frank engaged in the scheme that the Complaints allege, and that they did so with the *mens rea* required by the Nevada corporate statutes, the Trustee was going to have a substantial and complex challenge in overcoming the release to which both individuals were parties, and in implicating ARC (which did not receive the release) in the fiduciary breaches. Indeed, this Court has ruled in the Zyen Case that vicarious liability alone would not suffice to render ARC liable for Mr. Roseman's alleged breaches here.

41.     What's more, proving damages would (and will) present significant difficulties.  To be sure, the Debtor's performance unquestionably suffered during the period of the alleged conspiracy.  But the company rebounded substantially in the months following the February 2007 resolution, and was worth in excess of $100 million by May and June 2007.  And there will be practical — if not legal — difficulties in seeking to attribute the Debtor's ensuing financial problems to the Settling Defendants' alleged misconduct while concurrently arguing in the Zyen Case that it was Fertitta Enterprises and its alleged co-conspirators who bankrupted the Debtor through their misconduct commencing in June 2007.  Thus, while the Trustee continues to believe in the validity and viability of his claims against the Settling Defendants (and the non-settling ones), the first *A&C Properties* factor argues strongly in favor of the Proposed Settlement here.

42.     The second factor (the collectibility of a judgment) played the smallest role of the four in the Trustee's analysis.  Between the significant financial resources of the two individual Settling Defendants and the likely availability of D&O coverage for a portion of a judgment against them, the Trustee has not viewed the risk of non-collection as a principal motivating factor for a settlement with the Settling Defendants.  Still, it bears noting that, in the current economic environment — in Las Vegas and elsewhere — no recovery is assured; and the Trustee is given to understand that the insurance carrier was asserting potentially meritorious defenses to a portion of the claims.  Additionally, the Trustee has been informed that ARC has no assets and is in the process of dissolving.  Thus, the second factor weighs in favor of the Proposed Settlement here.

43.     The third factor — i.e., the complexity of the litigation combined with the expense and time to litigate it — militates strongly for the Proposed Settlement.  Even beyond the complexity and difficulty of the factual and legal issues discussed in connection with factor (a) above, this third factor is especially pertinent here because, as the Court is aware, the Trustee and his counsel will be having to

1  devote substantial time, energy and resources to the Zyen Case in the near future.  And
2  although the resolution of the claims against the Settling Defendants will not bring the
3  Adversary Proceeding to an end, the practical reality is that, with the non-settling
4  defendants all abroad and still needing to be served, the case against them will not be
5  demanding substantial litigation for several months or more (and thus will pose less of
6  a conflict with the Zyen Case than would proceeding apace in the claims against the
7  three Settling Defendants).[1]

8        44.    Finally, the fourth factor, the paramount interest of creditors,
9  weighs heavily in favor of the Proposed Settlement here.  There may be some creditors,
10  and perhaps even some shareholders, who believe that the Trustee should go for broke
11  — so to speak — with his claims against the Settling Defendants.  The Proposed
12  Settlement, however, leaves a number of defendants potentially liable for the events at
13  issue in the Adversary Proceeding, while providing the Trustee with substantial funds
14  with which to make payments on the administrative claims and thereby move closer to
15  the point of time when funds will be available for distribution to unsecured creditors.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, the Trustee submits that the Proposed Settlement is in the best interests of the Trust Estate and its beneficiaries, and prays that this Court enter an Order (i) approving the Trustee's Proposed Settlement with the Settling Defendants, as described above and documented in Exhibit A hereto, and (ii) granting the Trustee such other and further relief as the Court deems just and proper.

Dated: May 3, 2010

---

[1] The Trustee is taking steps and making arrangements to serve Mr. Dash in China, but his understanding is that this process takes a minimum of three to six months even if Mr. Dash remains located at his current business address there.

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | |
| 3 | /s/  Jonathan A. Backman |

Jonathan A. Backman
Law Office of Jonathan A. Backman
117 N. Center Street
Bloomington, Illinois 61701-5001
(309) 820-7420
FAX:  (309) 820-7430
jbackman@backlawoffice.com

*David Herzog, as Liquidating Trustee for the
   Estate of Xyience, Incorporated*

# CERTIFICATE OF SERVICE

I, Jonathan A. Backman, hereby certify that on May 3, 2010, I electronically filed the foregoing **Liquidating Trustee's Motion for Approval of a Settlement of Certain Pending Claims against ARC Investment Partners, LLC, Adam Roseman and Adam Frank,** using the ECF system which will send notification of such filing to the following:

SHEENA R. AEBIG
on behalf of Interested Party DARLIS INVEST & TRADE CORP.
saebig@williamskastner.com

JEFFREY R. ALBREGTS
on behalf of Defendant ARLINGTON MID-CITIES WAREHOUSES, INC.
jalbregts@nevadafirm.com, kmorrow@nevadafirm.com

OGONNA M. ATAMOH
on behalf of Creditor
SANTORO, DRIGGS, WALCH, KEARNEY, HOLLEY & THOMPSON
oatamoh@nevadafirm.com, bkecf@nevadafirm.com; sliberio@nevadafirm.com; manthony@nevadafirm.com; oswibies@nevadafirm.com

KEITH MILES AURZADA
on behalf of Creditor RACKSPACE US, INC.
keith.aurzada@bryancave.com, lupe.rojas@bryancave.com

ANTHONY W. AUSTIN
on behalf of Creditor ZUFFA MARKETING, LLC
aaustin@lrlaw.com

LAUREL E. DAVIS
on behalf of Debtor XYIENCE INCORPORATED
ldavis@fclaw.com, mhurtado@fclaw.com

JASON C. FARRINGTON
angie@corylaw.us

MICHAEL N. FEDER
on behalf of Creditor ZUFFA MARKETING,LLC
mfeder@lrlaw.com, cwrangham@lrlaw.com;nfortenberry@lrlaw.com

GREGORY E. GARMAN
on behalf of Counter-Defendant FERTITTA ENTERPRISES
bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

DOUGLAS D. GERRARD
on behalf of Creditor MJE INVESTMENTS, LLC
DGERRARD@GERRARD-COX.COM,ekaymedellin@gerrard-cox.com; dwaddoups@gerrard-cox.com; jberghammer@gerrard-cox.com

| | |
|---|---|
| 1 | JAMES D. GREENE |
| | on behalf of Defendant ARC INVESTMENT PARTNERS |
| 2 | jgreene@rsrslaw.com, mkemple@rsrslaw.com;cjorvig@rsrslaw.com; fritchie@rsrslaw.com |
| 3 | JEFFREY R. HALL |
| | on behalf of Interested Party DAVID HERZOG |
| 4 | jhall@hutchlegal.com, kthompson@hutchlegal.com |
| 5 | KEVIN R. HANSEN |
| | on behalf of Defendant BARDO EQUITIES, LLC |
| 6 | kevin@shumwayvan.com, sandy@shumwayvan.com |
| 7 | BRIGID M. HIGGINS |
| | on behalf of Defendant ZINKIN ENTERTAINMENT LLC, |
| 8 | bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com |
| 9 | MATTHEW L. JOHNSON |
| | on behalf of Creditor |
| 10 | THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |
| | bankruptcy@mjohnsonlaw.com, mjohnson@mjohnsonlaw.com; |
| 11 | candice@mjohnsonlaw.com |
| 12 | PAMELA R. LAWSON |
| | on behalf of Creditor |
| 13 | HUNTERTON & ASSOCIATES, A PROFESSIONAL CORPORATION |
| | plawson@huntertonlaw.com |
| 14 | |
| | MATTHEW E. MCCLINTOCK |
| 15 | on behalf of Creditor |
| | THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |
| 16 | matthew.mcclintock@klgates.com, teresa.gomez@klgates.com |
| 17 | JON PEARSON |
| | on behalf of Debtor XYIENCE, INCORPORATED |
| 18 | pearsonj@ballardspahr.com, darnellk@ballardspahr.com |
| 19 | LUKE KRISTOPHER RATH |
| | on behalf of Interested Party DAVID HERZOG |
| 20 | krath@hutchlegal.com, k7lkr@aol.com |
| 21 | LAWRENCE J. SEMENZA |
| | on behalf of Defendant ARC INVESTMENT PARTNERS, LLC, and ADAM ROSEMAN |
| 22 | lsemenza@bhfs.com, orodriguez@bhfs.com |
| 23 | AMBRISH S. SIDHU |
| | on behalf of Stockholder ALISON NEWMAN |
| 24 | ecfnotices@sidhulawfirm.com |
| 25 | ROBERT SPEAR |
| | on behalf of Petitioning Creditor LAWRENCE ABERLE |
| 26 | rspear@remmelspear.com, karlee@remmelspear.com |
| 27 | U.S. TRUSTEE - LV - 11 |
| | USTPRegion17.lv.ecf@usdoj.gov |
| 28 | |

S. GARY WERLEY
on behalf of Defendant
ARLINGTON MID-CITIES WAREHOUSES, INC.
sgwerley@werleylaw.com

MATTHEW C. ZIRZOW
on behalf of Counter-Defendant FERTITTA ENTERPRISES
on behalf of Adam Frank
bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

and I hereby certify that I have delivered the document to the following parties by electronic transmission to:

JOSEPH A. BAILEY III
Drinker Biddle & Reath LLP
1500 K Street NW
Washington, D.C. 20005-1209
Tel: (202) 230-5105
Fax: (202) 842-8465
Joseph.Bailey@dbr.com
on behalf of U.S. Specialty Insurance Company

/s/  Jonathan A. Backman

-iii-